[No. B103189. Second Dist., Div. Four. Nov. 19, 1996.]

ST. MARY MEDICAL CENTER et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
GIOVANNI G. MENNELLA et al., Real Parties in Interest.

**COUNSEL**

Rushfeldt, Shelley & Drake, Richard J. Ryan, Nancy L. Flores and Dawn Cushman for Petitioners.

No appearance for Respondent.

Terrence F. Riley for Real Parties in Interest.

**OPINION**

**HASTINGS, J.**—The question we address in this petition is whether or not the provisions of Code of Civil Procedure section 2034[1] preclude depositions of experts who are utilized in connection with summary judgment or summary adjudication proceedings if there has not yet been an exchange of

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise noted.

experts pursuant to that section. We conclude that where a party presents evidence that raises a significant question relating to the foundation of an expert's opinion filed in support of or in opposition to a motion for summary judgment or summary adjudication, a deposition limited to that subject should be allowed.

### STATEMENT OF THE CASE

This is a medical malpractice action filed on June 23, 1994, by real parties in interest, husband and wife Giovanni G. and Connie Mennella, against, among others, St. Mary Medical Center, John Baker, M.D. and Guy Mayeda, M.D., petitioners. It is alleged that petitioners, and other defendants, negligently rendered medical care to Giovanni resulting in injuries for which he seeks monetary damages. Connie alleges damages for loss of consortium.

After answering the complaint, petitioners filed a motion for summary judgment. No trial date had yet been set. They raised the issue of statute of limitations and also asserted that none of them were negligent in the care and treatment of Giovanni. In support of the motion, they filed a declaration by Dr. Michael Jamison, a fellow of the American College of Cardiology and board certified in both internal medicine and internal medicine/cardiovascular disease. He rendered an opinion that none of the three petitioners were negligent in the treatment rendered to Giovanni. Two other defendants, Serge M. Tobias, M.D. and Winifried Waider, M.D., timely joined in the motion.

Real parties filed opposition to the motion, relying upon the declaration of Leslie Eber, M.D., to establish triable issues of fact relating to the negligence of petitioners. Dr. Eber declared that he was a board certified internist with a subspecialty in cardiology and that he had been retained by real parties in interest as an expert witness. He rendered an opinion that each of the petitioners, as well as Drs. Tobias and Waider, was negligent and breached the standard of care in treatment rendered to Giovanni. Pertinent to our discussion herein is the following statement: "It is my professional opinion that the cardiology fellows at St. Mary Medical Center, Dr. Mayeda and Dr. Baker, and Mr. Mennella's attending cardiology physicians, Dr. Tobias and Dr. Waider used [an] improper technique to establish the patentcy of the interarterial sheaths which had been placed in Mr. Mennella on May 13, 1993."

On February 16, 1996, petitioners noticed the deposition of Dr. Eber for March 18, 1996, and at the same time they served and filed a notice that they were taking their motion for summary judgment off calendar. Dr. Eber was served with a subpoena on February 21, 1996.

On February 28, 1996, counsel for real parties wrote to counsel for petitioners advising that he had instructed Dr. Eber not to appear for the deposition. He explained that Dr. Eber was a retained expert, therefore, the terms of section 2034 applied and until there had been an exchange of experts, Dr. Eber's deposition was premature. He did agree to produce Dr. Eber at that time.

On March 19, 1996, counsel for petitioners replied: "As you know, Dr. Eber was not subpoenaed as a designated expert. He was subpoenaed insofar as his Declaration in support of [real parties'] Opposition to our clients' motion for summary judgment." She suggested that she be allowed to depose Dr. Eber, and if not, that she would be compelled to seek court intervention.

On April 3, 1996, petitioners filed a motion to compel the deposition of Dr. Eber. As justification for their request they explained that they had reservations about the foundation of Dr. Eber's opinions expressed in opposition to the motion for summary judgment. It was pointed out that petitioners had their expert, Dr. Jamison, review the declaration of Dr. Eber, and Dr. Jamison "found the bases for Dr. Eber's conclusions to be untenable." Petitioners sought an order from the trial court that they be allowed to depose Dr. Eber "in connection with their motion for summary judgment."

Drs. Tobias and Waider also joined in this motion. They argued: "Dr. Eber's declaration is nonsensical and relied on an improper hypothetical. In order to establish that Dr. Eber's opinions are not based on the facts which are the basis of this lawsuit, it is necessary to take his deposition so that an adequate reply to [real parties'] opposition may be prepared. It is defendants' intention to limit the deposition solely to Dr. Eber's opinions as they are reflected in his declaration." Kathryn S. Pyke, counsel for Drs. Tobias and Waider filed a declaration in which she states: "I was the attorney of record in a case entitled *Ridgway* v. *Simpson, M.D.* . . . in the Los Angeles Superior Court, Long Beach Division. As a result of a fraudulent declaration filed by plaintiff's expert, defendant's initial motion for summary judgment was denied and defendant incurred over $10,000 in costs to attend the depositions and participate in discovery which would not have been necessary if the expert had been deposed prior to the motion for summary judgment hearing."

Real parties opposed the motion, relying on the provisions of section 2034: "Based on C.C.P. § 2034(i), the appropriate time to depose a party's expert witness occurs after an appropriate demand to disclose expert witness[es] takes place and in response to such a demand a party provides its

designated experts. It is at that time that such a party's expert witnesses can submit to a deposition. Therefore, defense counsel's attempt to take the deposition of Dr. Leslie Eber at this stage of the litigation is improper." Real parties sought sanctions pursuant to section 128.5, urging that the motion was frivolous.

At oral argument, the trial court noted: "The tentative ruling is to deny the motion. The reason is you're not entitled to depose an expert until there's an expert designation done right before the first trial date. [¶] The problem, you see, is that there is no provision in the law to depose somebody who might be an expert. [¶] Let me put it another way. We don't know that he's going to be designated before trial as an expert. He may simply be a consultant. . . . But the thing is there's no provision in the law of the Discovery Act that a deposition of an expert who provides a declaration in a summary judgment motion. And the reason for that is that you can't get into a credibility or a weighing situation in summary judgment. It's either granted or denied. [¶] If indeed—and I'm giving you the law so you'll know what to argue about—if indeed his declaration is no good, you should have continued on with your summary judgment motion, and in your reply dealt with it by your expert."

In response to the court's tentative ruling, counsel for Drs. Tobias and Waider made the following argument: "I've been down this road once before. Not in this particular court, but it was in Long Beach. And the real problem I have is that in the declaration of Doctor Eber the only information we have from his declaration is he claims that Doctor Waider and Doctor Tobias, my clients, on May 13th of this particular year, '94 I believe, did some procedure that he felt was improperly done. [¶] *Doctor Waider wasn't involved in that procedure on that day.* [¶] . . . [¶] The problem is I went through this once before and that's what we did. We went ahead with the summary judgment. The court denied it saying 'yeah, you're right, this [the opposing expert's declaration] is ambiguous. There's all sorts of problems.' But the ambiguity in and of itself . . . [c]reated a fact issue. [¶] Then we go through $10,000 worth of discovery, we get the declaration and we finally take the expert's deposition. The expert says, 'Oh, did I say that? I didn't mean to. I'm sorry; why, I never meant to include your doctor in the declaration.' And we get a cost bill for $10,000. But that's against the plaintiff, so. [¶] But the problem with 437 is that it has provisions for submitting false declarations, but it doesn't give you an opportunity to challenge them. [¶] . . . [¶] That's sort of the situation that we're in. It's like we have this declaration; yes, we can challenge it in a reply brief, but the court's not there to really kind of sort through this mess. All they have to do

is look at what's in front of them. And that's my concern, since I've been down this road before." (Italics added.)

The trial court denied the motion and denied the request for sanctions.

Petitioners filed with us a petition for writ of mandate seeking to have the order of the trial court reversed. Petitioners urge that section 2034 applies only when a trial date has been set, not the case here. They also contend that if we adopt the argument of real parties, that a defendant in a medical malpractice action could rarely present a serious motion for summary judgment because of conflicting time restrictions between sections 2034 and 437c. We concluded that the petition raised a significant issue identifying a procedural conundrum which needed to be addressed. We issued an order to show cause, set the matter for hearing, and requested opposition from respondent and real parties.

As in the trial court, real parties urge that their retained expert cannot be deposed until the provisions of section 2034 so allow. They also cite the case of *County of Los Angeles* v. *Superior Court* (1990) 224 Cal.App.3d 1446 [274 Cal.Rptr. 712].

## DISCUSSION

Section 2034 provides a scheme for designation and discovery of expert witnesses who the parties contemplate will be used at trial. It begins as follows: "After the setting of the initial trial date for the action, any party may obtain discovery by demanding that all parties simultaneously exchange information concerning each other's expert trial witnesses. . . ." (§ 2034, subd. (a).) The demand for an exchange of information shall be made "no later than the 10th day after the initial trial date has been set, or 70 days before that trial date, whichever is closer to the trial date." (§ 2034, subd. (b).) The "specified date of exchange shall be 50 days before the initial trial date, or 20 days after service of the demand, whichever is closer to the trial date, unless the court, on motion and a showing of good cause, orders an earlier or later date of exchange." (§ 2034, subd. (c).) "On receipt of an expert witness list from a party, any other party may take the deposition of any person on the list." (§ 2034, subd. (i).)

Summary judgment is provided for in section 437c and provides that such a motion may not be brought until at least 60 days after the general appearance of the party against whom it is brought. (§ 437c, subd. (a).) If the moving party is the defendant that means 60 days after the action is filed. In addition, a motion for summary judgment must be heard "no later than 30

days before the date of trial, unless the court for good cause orders otherwise." Notice of a motion for summary judgment, if personally served, must be given 28 days ahead of the hearing date, with an additional 5 days if service is by mail. (§ 437c, subd. (a).) Thus, unless the court orders otherwise, a party must have prepared and served the motion for summary judgment at least 58 days ahead of the trial date, assuming that the hearing date can be secured exactly 30 days ahead of the trial date.

We agree with petitioners that the juxtaposition of the time requirements of sections 2034 and 437c causes a problem for litigants in drafting and noticing an effective motion pursuant to section 437c. The designation of experts will not usually take place until 50 days or less prior to trial. Absent the court's ordering otherwise, this leaves no time to depose the opposition experts before the time that a motion for summary judgment is required to be noticed. Even then, assuming that a medical malpractice defendant notices a motion 58 days ahead of the trial date, opposition is called for in 14 days, or 44 days ahead of the trial date. (§ 437c, subd. (b).) A reply is then allowed to be filed within five days ahead of the hearing date, or thirty-five days ahead of trial. (*Ibid.*) Assuming that the names of experts are exchanged 50 days ahead of the trial date, this leaves only a window of 15 days for the moving party to notice, prepare for, take the depositions of the opposition experts, and file a reply to the opposition. This is an unreasonably short period of time in which to operate, especially if the parties cannot cooperate.

 "The purpose of summary judgment is to penetrate evasive language and adept pleading and to ascertain, by means of affidavits, the presence or absence of triable issues of fact. Accordingly, the function of the trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist, and not to decide the merits of the issues themselves. [Citations.]" (*Preach* v. *Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1449-1450 [16 Cal.Rptr.2d 320].) Thus, it would defeat the purpose of the summary procedure were we to recognize an absolute right of a party involved in the process to depose any person who provides evidence in support of or opposition to the proceeding. On the reverse side of the coin, it would defeat the concept of a summary procedure if the opposition party were to be allowed to defeat the motion by less than candid declarations or affidavits in opposition. This is recognized in section 437c, subdivision (i) which allows the court to issue sanctions if "any of the affidavits are presented in bad faith or solely for purposes of delay." However, the statute does not address when or how the court may address this issue.

We believe that in proper circumstances the court should allow a party to a summary proceeding the opportunity to take limited discovery which may

effectively dispose of the proceeding. Section 437c, subdivision (h) contemplates that the party opposing the motion may request a continuance for purposes of discovery: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just." Courts have construed this to mean that the party seeking the continuance must show the court that the proposed discovery " 'would have led to "facts essential to justify opposition." ' [Citation.]" (*Scott* v. *CIBA Vision Corp.* (1995) 38 Cal.App.4th 307, 326 [44 Cal.Rptr.2d 902].) There is no comparable provision for the moving party; however, the moving party controls when the motion is brought and, except for expert witnesses, will have had a chance to depose the necessary witnesses prior to noticing the motion. This obviously cannot be the situation where one or more of the witnesses to the action will be an expert and there is yet no designation called for pursuant to section 2034.

In *County of Los Angeles* v. *Superior Court, supra*, 224 Cal.App.3d 1446, we addressed the issue of whether or not party defendants in a medical malpractice action could be required to give opinion testimony at their depositions relating to after-the-fact opinions of their care and treatment of a plaintiff before the section 2034 exchange. The trial court had ordered the party physicians to so testify. We reversed the order and noted as follows: "In a malpractice action, the defendant himself or herself may provide the expert testimony which establishes plaintiff's prima facie case. [Citation.] However, the present expert opinions of a party physician concerning the care given are irrelevant unless the physician is designated as an expert witness. . . . [¶] Questions to the defendant physicians about their impressions and reasons for their action or lack of action at the time the medical procedure was performed are, of course, entirely appropriate. . . . But, as [in] *Scarano* [v. *Schooner* (1958) 158 Cal.App.2d 612 (323 P.2d 178, 68 A.L.R.2d 416)] . . . questions about after-the-fact opinions and impressions of the physicians stand in quite another light." (224 Cal.App.3d at pp. 1455-1456.) We based our reasoning on section 2034: "As we have seen, . . . section 2034 is expressly applicable to the expert opinion of parties to a lawsuit. We see no reason to disrupt the carefully crafted legislative scheme for the regulation of discovery of the identity, qualifications and opinions of expert witnesses. The trial court order that the physician defendants testify at deposition about their present opinion of the medical propriety of their acts, even though they have not been designated as expert witnesses, would have that effect. It is for that reason that we direct that it be set aside." (224 Cal.App.3d at p. 1457.)

We do not withdraw from our opinion in *County of Los Angeles* v. *Superior Court.* The distinction is that no summary judgment was pending in that case and the discovery was sought during depositions of the physicians as parties to the litigation. Here, there has been a form of designation of experts, those identified in the motion for summary judgment and the opposition. We are not dealing with the "carefully crafted legislative scheme" of section 2034. In fact, no trial date has yet been assigned in this situation. Instead, we are dealing with the right of a party to challenge the litigation by means of summary judgment. ▇ While it is true that motions for summary judgment are to be heard on affidavits or declarations, contradictions raised by discovery may require the trial court to disregard the declarations or affidavits. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 22 [112 Cal.Rptr. 786, 520 P.2d 10].) This applies equally to party and nonparty deponents. (*Preach* v. *Monter Rainbow, supra,* 12 Cal.App.4th at p. 1451.) For that reason, we believe that under the proper circumstances, the parties should be allowed to depose an expert who supplies a declaration or affidavit in support of or in opposition to summary judgment or summary adjudication where there is a legitimate question regarding the foundation of the opinion of the expert.

We believe that is the situation presented in this case. Counsel for Drs. Tobias and Waider presented information to the court from which a serious question arose about whether or not Dr. Eber's declaration may have been factually incorrect, at least as to Dr. Waider. Counsel pointed out that Dr. Waider was not involved in the procedure of May 13. While counsel could have presented a reply declaration from Dr. Waider to that effect, it would have been contradictory to the declaration of Dr. Eber and the trial court would have been required to conclude that a triable issue of fact existed, at least on that issue. It is possible that upon deposition of Dr. Eber, confronted with proof that he may have been mistaken in his belief that Dr. Waider was involved in the procedure, he may concede his mistake. In addition, counsel for petitioners submitted evidence which suggested that "the bases for Dr. Eber's conclusions to be untenable." Petitioners' counsel and Dr. Waider's counsel each indicated that the deposition would cover no more than the opinions rendered in the declaration of Dr. Eber. Thus, we conclude that failure to allow the discovery was an abuse of discretion.

In reaching this conclusion we caution that the process should not be utilized to turn summary proceedings into mini-trials. Whether to grant discovery in a given case falls within the sound discretion of the trial court based upon all of the facts presented. There must be objective facts presented which create a significant question regarding the validity of the

affidavit or declaration which, if successfully pursued, will impeach the foundational basis of the affidavit or declaration in question.

## DISPOSITION

Let a writ of mandate issue ordering the trial court to set aside the order denying the deposition of Dr. Eber and enter a different order granting the motion with the deposition to be limited to foundational issues relating to the opinions rendered by Dr. Eber in his declaration in opposition to the motion for summary judgment. Costs are awarded to petitioners.

Vogel (C. S.), P. J., and Epstein, J., concurred.