Filed 4/13/15  Vance v. Apple Valley Unified School Dist. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| SUTTON VANCE et al., | |
| Plaintiffs and Appellants, | E059632 |
| v. | (Super.Ct.No. CIVVS1103618) |
| APPLE VALLEY UNIFIED SCHOOL DISTRICT et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Brian S. McCarville, Judge.  Affirmed.

Law Offices of Thomas Edward Wall, Thomas Edward Wall for Plaintiffs and Appellants.

Law Offices of Hengesbach & Dawson, Daren E. Hengesbach and Nicole R. Cieslinski for Defendant and Respondent Apple Valley Unified School District.

Carpenter, Rothans & Dumont, Justin Reade Sarno; Thompson & Colegate, Michael J. Marlatt and Lisa V. Todd for Defendant and Respondent Stephanie Casteel.

1

Plaintiffs and appellants Sutton Vance and Thomas O'Shea, the parents of decedent Keegan O'Shea (Keegan), initiated this action for general negligence against defendants and respondents Apple Valley Unified School District (AVUSD) and bus driver Stephanie Casteel (Casteel). They alleged that Keegan, a minor, was involved in a sexual relationship with Casteel, an adult, and that Casteel and AVUSD knew about Keegan's history of drug abuse. They further claimed that Casteel and Keegan argued on July 2, 2010, and the argument led to Keegan's drug overdose and death. Defendants separately moved for summary judgment pursuant to Code of Civil Procedure section 437c,[1] attacking the legal element of causation. AVUSD also claimed it was statutorily immune. (Ed. Code, § 44808.) Following briefing and argument, the trial court granted the motions for summary judgment, finding that plaintiffs failed to establish causation as a matter of law.

Plaintiffs appeal, contending the trial court erred in refusing to grant a continuance to allow them to present expert testimony and that genuine issues of material fact exist as to (1) whether Keegan's relationship with Casteel caused his death, (2) whether AVUSD had notice of Casteel's relationship with Keegan, and (3) whether AVUSD is immune from liability. We affirm.

## I.  FACTS AND PROCEDURAL HISTORY

Keegan was born on July 21, 1992. Prior to his death in 2010, he had a history of drug abuse and drug addiction, including use of heroin, Percocet, OxyContin, and

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Fentanyl. From December 2009 to June 2010, he was a resident of a drug rehabilitation facility in Apple Valley and a student at Granite Hills High School, part of the AVUSD; he was transported to and from the school on a school bus driven by Casteel. In June 2010, Keegan completed drug rehabilitation, earned a GED from Granite Hills, and returned to Hemet to live with his parents. On July 1, 2010, he wanted to move out of the family home after arguing with his father.

In the "late evening hours" of July 1, 2010, Keegan's mother drove him to a restaurant in Devore, where they met Casteel, who transported Keegan to a motel in Hesperia. According to Keegan's brother, Keegan said he went to spend the night at the motel with Casteel because he "needed a break" from his parents. On July 2, 2010, Keegan spoke with his mother and brother, and his brother offered Keegan a place to stay. The next day, Keegan was found deceased in the motel room at approximately 1:00 p.m. An investigation into his death was initiated.

Chanikarn Changsri, M.D., forensic pathologist and Deputy Medical Examiner with the San Bernardino County Sheriff's Department, Coroner's Division, autopsied Keegan's body. She opined that his death, within a reasonable medical probability, was caused by Fentanyl toxicity due to chronic drug abuse. In San Bernardino County, if a decedent has a history of chronic drug abuse, the manner of death is regarded as "natural." Dr. Changsri did not regard Keegan's death as a suicide, given his history and

3

the conditions of his body at the time of death. It is unknown what led Keegan to ingest the drugs that ultimately led to his demise.[2]

On July 11, 2011, plaintiffs initiated this action against AVUSD and Casteel, alleging one cause of action for negligence. On February 27, 2013, Casteel moved for summary judgment on the ground that she did not cause Keegan's death. On March 4, 2013, AVUSD also moved for summary judgment on the grounds there was no evidence of a negligent or wrongful act that caused Keegan's death, and AVUSD is immune from liability pursuant to Education Code section 44808. Plaintiffs opposed both motions and requested a continuance of the hearing date for the purpose of obtaining an expert declaration, if so required by the trial court, that the relationship itself was a contributing factor to Keegan's death. The request was denied on the ground that plaintiffs failed to submit an affidavit showing that facts exist to oppose summary judgment; however, the facts are presently unavailable.

Turning to the merits of the summary judgment motions, the trial court held as follows: (1) Keegan's fatal use of drugs was not related to the alleged relationship with Casteel; (2) AVUSD is immune from liability pursuant to Education Code section 44808; (3) AVUSD had neither actual nor constructive notice of the alleged relationship between

---

[2] We note plaintiffs' statement of facts includes references to certain facts (i.e., that Casteel was Keegan's girlfriend; their relationship was known by fellow employees; Casteel knew of Keegan's history of drug abuse and his fragile emotional state; etc.), defendants' evidentiary objections to which were sustained. Plaintiffs have not challenged the court's evidentiary rulings on appeal. As such, we disregard any reference to those facts. (§ 437c, subd. (c).)

4

Keegan and Casteel; and (4) any alleged relationship between the two did not cause Keegan's death. Judgment was entered in favor of defendants, and plaintiffs appealed.

## II. DISCUSSION

### A. Request to Continue Hearing on Motion for Summary Judgment

In opposing summary judgment, plaintiffs asserted that defendants failed to meet their burden of proof on the issue that the relationship between Casteel and Keegan contributed to Keegan's drug overdose and death. Plaintiffs further claimed that the issue "is one for the jury to decide." Alternatively, plaintiffs requested a continuance to obtain expert testimony "if the Court requires expert testimony . . . that the relationship between Keegan . . . and Casteel contributed to the overdose which lead [sic] to the death of Keegan." The trial court denied the request because plaintiffs failed to comply with the requirements of section 437c, subdivision (h).

On appeal, plaintiffs assert they "intended and informed the trial court of this intent, to have experts testify that the romantic and sexual relationship that [minor Keegan] had with an adult 10 years older than him contributed to [his] continue[d] drug abuse and eventual death." They further claim they "informed the trial court that expert testimony would be necessary to prove other issues raised in the summary judgment motion." Thus, they fault the trial court for refusing to continue the hearing so they could present expert testimony.

"If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or

5

order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just." (§ 437c, subd. (h).) "'"'"Generally, [the] power to determine when a continuance should be granted is within the discretion of the court, and there is no right to a continuance as a matter of law. [Citation.]"'" [Citation.] An exception is created by Code of Civil Procedure section 437c, subdivision (h), which mandates that the court grant a continuance of a hearing on a motion for summary judgment "'"upon a good faith showing *by affidavit* that a continuance is needed to obtain facts essential to justify opposition to the motion.'" [Citations.]' [Citation.]" (*Mahoney v. Southland Mental Health Associates Medical Group* (1990) 223 Cal.App.3d 167, 170.) "Subdivision (h) was added to section 437c '"to mitigate summary judgment's harshness"'" as to "'an opposing party who has not had an opportunity to marshal the evidence.' [Citation.]" (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 253.) Thus, a continuance is "virtually mandated" upon a proper showing. (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 395.)

Here, the declaration of counsel in support of plaintiffs' request for a continuance failed to meet the requirements of section 437c, subdivision (h). Counsel did not reference any specific evidence that plaintiffs were unable to discover. Rather, he explained that no expert declaration had been submitted because defendants had failed to sustain their burden of establishing the lack of a triable issue of fact. Counsel added that if the trial court believed otherwise, then it should allow further time for plaintiffs to

obtain expert testimony.[3]  However, "section 437c, subdivision (h) requires more than a simple recital that 'facts essential to justify opposition may exist.'  The affidavit or declaration in support of the continuance request must detail the specific facts that would show the existence of controverting evidence.  [Citations.]" (*Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 715.)  Plaintiffs' counsel's declaration detailed no facts whatsoever.  It did not state that an expert had been consulted and that the expert would opine on the issue causation.  As explained by the *Lerma* court, "The statute cannot be employed as a device to get an automatic continuance by every unprepared party who simply files a declaration stating that unspecified essential facts may exist.  The party seeking the continuance must justify the need, by detailing both the particular essential facts that may exist and the specific reasons why they cannot then be presented." (*Id*. at pp. 715-716; see also *Cooksey v. Alexakis*, *supra*, 123 Cal.App.4th at p. 255.)  Because plaintiffs failed to meet the requirements of section 437c, subdivision (h), the trial court was justified in denying their request for a continuance.[4]

---

[3]  As the trial court observed, "Plaintiff has provided no affidavit that indicates that the facts necessary to oppose the existence of anything which Plaintiff has not already had before him, the Court finds is only a do-over if the Defendant is successful."

[4]  Contrary to plaintiffs' claim that disclosure of the anticipated expert testimony would have required their counsel to breach his attorney work product privilege, courts have recognized that under certain circumstances, disclosure of expert witnesses and their opinions may be necessary to oppose a motion for summary judgment. (*St. Mary Medical Center v. Superior Court* (1996) 50 Cal.App.4th 1531, 1538-1540.)

The trial court here made this same point, stating:  "[G]oing back to Plaintiff's application to disclose or to continue, Plaintiff indicated that he is not obligated to disclose experts at this time pursuant to Code of Civil Procedure [section] 2034.010.  He is correct.  However, that does not excuse Plaintiff from supplying expert declarations to

*[footnote continued on next page]*

7

**B. Motion for Summary Judgment**

*1. Standard of Review*

Summary judgment is properly granted when all of the papers submitted on the motion show there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c).) A defendant is entitled to summary judgment if it establishes a complete defense to each of the plaintiff's causes of action or shows that one or more elements of each cause of action cannot be established. (*Id.*, subd. (*o*); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 (*Aguilar*).) A moving defendant bears an initial burden of making a prima facie showing that there are no triable issues of material fact. If the defendant meets this burden, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of material fact. (§ 437c, subd. (p)(2); *Aguilar, supra,* at pp. 850-851.) From commencement to conclusion, however, the moving party defendant generally bears the burden of persuasion that there is no triable issue of material fact and that the defendant is entitled to judgment as a matter of law. (*Id.* at p. 850.)

On appeal from the grant of a motion for summary judgment, we independently determine whether there are any triable issues of material fact and the moving party is entitled to judgment as a matter of law. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465,

---

*[footnote continued from previous page]*

oppose a summary judgment or summary adjudication. [¶] Nothing in the law requires a . . . moving party . . . to wait to file a summary adjudication or summary judgment until after the expert designation is made. If that were the case, summary judgments and adjudications would always be made on death's door since the designation of experts normally occur later in the proceedings."

476.)  We consider all of the evidence set forth in the moving and opposition papers, together with inferences reasonably deducible from the evidence, and we view the evidence in the light most favorable to the party opposing the motion.  (*Aguilar, supra,* 25 Cal.4th at p. 843; *Ambriz v. Kelegian* (2007) 146 Cal.App.4th 1519, 1530.)

    2.  *Wrongful Death*

"The wrongful death cause of action was both created and limited by the Legislature.  '"Before 1862 there was no wrongful death action in this state.  [Citation.] In that year the Legislature, following the philosophy of Lord Campbell's Act, and to a substantial extent its phraseology, created such a cause of action.  (Stats. 1862, p. 477.)"' [Citations.] . . . [T]he California Supreme Court examined the history of this cause of action and concluded 'the Legislature intends to occupy the field of recovery for wrongful death.  For this reason the remedy remains a creature of statute in California [citations] regardless of whether a cause of action did or did not exist at common law. . . . [¶]  Because it is a creature of statute, the cause of action for wrongful death "exists only so far and in favor of such person as the legislative power may declare."  [Citation.]' [Citation.]"  (*Bromme v. Pavitt* (1992) 5 Cal.App.4th 1487, 1497 (*Bromme*).)

"A cause of action for the death of a person caused by the wrongful act or neglect of another" may be asserted by those persons "who would be entitled to the property of the decedent by intestate succession."  (§ 377.60, subd. (a).)  Under this section, a plaintiff must prove the death was *caused by* the defendant's wrongful act or neglect, i.e., that the wrongful act was *a substantial factor in bringing about* the death.  (Cf. *Bromme, supra,* 5 Cal.App.4th at pp. 1497-1498.)  "Ordinarily, 'the actor's negligent conduct is

9

not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent.' [Citations.] However, 'if two forces are actively operating, one because of the actor's negligence, the other not because of any misconduct on his part, and each of itself is sufficient to bring about harm to another, the actor's negligence may be found to be a substantial factor in bringing it about.' [Citation.]" (*Id.* at p. 1498.)

According to the allegations in the complaint, this case involves two forces: Keegan's history of drug dependency and Casteel's alleged relationship[5] with him. Therefore, to establish that defendants' negligence was a *substantial factor* in causing Keegan's death, plaintiffs had to prove defendants' negligence was of itself sufficient to bring about that harm. Defendants moved for summary judgment on the ground that plaintiffs were unable to prove causation. The trial court agreed. Plaintiffs contend defendants failed to carry their burden of providing evidence sufficient to require a reasonable jury to render findings on causation unfavorable to plaintiffs. (*Aguilar, supra,* 25 Cal.4th at p. 851.) As explained below, defendants succeeded in shifting the burden to plaintiffs to raise a triable issue regarding causation.

Defendants seeking summary judgment on a wrongful death claim may submit the coroner's report and testimony to carry their initial burden regarding the cause of death. (*Majors v. County of Merced* (1962) 207 Cal.App.2d 427, 436-437 [defendant's motion for summary judgment on wrongful death claim was properly granted, in view of

---

[5] As to AVUSD, plaintiffs assert that its knowledge of such relationship and failure to take any action against Casteel to end the relationship makes it liable.

10

defendant's unopposed showing consisting of death certificate and transcript of coroner's inquest]; see also *National Life & Accident Ins. Co. v. Edwards* (1981) 119 Cal.App.3d 326, 335 [party successfully opposed summary judgment by pointing to death certificate, for purposes of raising triable issue regarding application of death-related term in insurance policy].) Here, defendants submitted evidence obtained via various discovery methods, including the deposition testimony of San Bernardino County Sheriff's Department Medical Examiner, Dr. Changsri. Dr. Changsri performed the autopsy and prepared the report that identified the cause of death. According to Dr. Changsri, Keegan died from Fentanyl toxicity due to chronic drug abuse. She ruled out suicide based on Keegan's history of drug abuse and the condition of his body at the time of death. The manner of death on his death certificate was listed as "natural." This showing was sufficient to establish that Keegan's death was not a suicide, absent evidence to the contrary, and constitutes evidence regarding the cause of death sufficient to support a judgment in favor of defendants. (*Bryson v. Manhart* (1936) 11 Cal.App.2d 691, 696; see *Morris v. Noguchi* (1983) 141 Cal.App.3d 520, 523, fn. 1.)

Defendants' showing was sufficient to shift the burden to plaintiffs to raise triable issues regarding causation to defeat summary judgment. (See *Aguilar*, *supra*, 25 Cal.4th at p. 857.) Plaintiffs could perhaps have raised a triable issue by providing "'competent expert testimony.'" (*Bromme*, *supra*, 5 Cal.App.4th at p. 1498.) But they failed to do so. Rather, plaintiffs relied solely on the conjectural proposition that a romantic/sexual relationship between minor Keegan (who had a history of drug abuse) and adult Casteel (AVUSD employee) was the legal cause of Keegan's drug overdose. They speculate

11

there was an argument between the two about their future as a couple which caused Keegan to use drugs to escape reality. They speculate that (1) Casteel said something to upset Keegan prior to his death; (2) perhaps she did not leave the hotel room at the time she claimed to have done so; and (3) perhaps she told Keegan she wished to end the relationship and he responded by self-medicating in order to escape his sadness. However, there is no evidence to support any of these conjectural possibilities.

Assuming the existence of a romantic/sexual relationship between Keegan and Casteel, we, like the trial court, are left with nothing more than speculative theories about what may have happened on the day that Keegan died. However, given the coroner's report, this is not enough. There must be concrete admissible evidence to rebut the fact that Keegan died from natural causes. There is none. When the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, "'*it becomes the duty of the court to direct a verdict for the defendant.*'" (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 775-776 (*Saelzler*), original italics.)

*Saelzler* involved a Federal Express employee who sought to deliver a package to a resident of a crime-ridden, gang-infested apartment complex. (*Saelzler*, *supra*, 25 Cal.4th at pp. 769, 770.) After attempting to deliver the package, plaintiff was attacked by three men who "beat her and attempted to rape her, inflicting serious injuries. After assaulting plaintiff, the assailants fled and were never apprehended." (*Id.* at p. 769.) The owners of the complex knew that criminal activity, including sexual assaults and rapes, had occurred frequently on the premises. (*Id.* at p. 770.) Security patrols were on duty at night and the apartment manager used the security personnel to escort her to her vehicle

whenever she left the premises. (*Id.* at pp. 770-771.) However, the plaintiff "offered no evidence showing the identity of her assailants, whether they were gang members, whether they trespassed on defendants' property to assault her, or whether they were tenants of the building who were permitted to pass through the security gates." (*Id.* at p. 769.) Instead, plaintiff submitted a declaration from a security expert who opined that the attack would not have occurred "'had there been daytime security and a more concerted effort to keep the gates repaired and closed . . . .'" (*Id.* at p. 771.) For purposes of discussion, the *Saelzler* court assumed duty and breach (*id.* at pp. 772, 775) and considered only whether the evidence established a triable question of causation, i.e., whether "defendants' possible breach of duty [was] a substantial factor in causing plaintiff's injuries." (*Id.* at p. 772.)

The Supreme Court refused to accept the plaintiff's attempts to manufacture triable issues via an expert declaration. The *Saelzler* court found *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472 (*Leslie G.*) to be directly on point. In *Leslie G.*, summary judgment was granted in favor of defendant on the ground the plaintiff failed to establish a sufficient causal connection between defendant's negligence and the assault. (*Id.* at pp. 478-479.) The court observed: "Since there is no direct evidence that the rapist entered or departed through the broken gate (or even that the broken gate was the only way he could have entered or departed), [plaintiff] cannot survive summary judgment simply because it is *possible* that he *might* have entered through the broken gate. [Citations.]" (*Id.* at p. 483.)

In both *Saelzler* and *Leslie G.*, the plaintiff argued that the expert's opinion testimony was sufficient to create a triable issue of fact regarding causation. Both courts disagreed: "Where, as here, there is evidence that the assault could have occurred even in the absence of the landlord's negligence, proof of causation cannot be based on mere speculation, conjecture and inferences drawn from other inferences to reach a conclusion unsupported by any real evidence, or on an expert's opinion based on inferences, speculation and conjecture. [¶] In this case, where there is no factual basis for the expert's opinion or for Leslie's general assertion of causation, the conclusion is unavoidable that summary judgment was properly granted." (*Leslie G.*, *supra*, 43 Cal.App.4th at p. 488, fn. omitted; *Saelzler*, *supra*, 25 Cal.4th at p. 775.)

Here, plaintiffs offered nothing more than a mere possibility that defendants' alleged acts, or failure to act, were a substantial factor in causing Keegan's death. Despite having ample opportunity, through pretrial discovery, to gather evidence to support their claims, plaintiffs' evidence merely shows the speculative possibility that Keegan's drug use may have been prevented if he had not been involved with Casteel. Plaintiffs' evidence would be no less speculative because of expert testimony. Moreover, we reject their assertion that the minor/adult relationship alone, based on expert testimony, may be sufficient "to cause Keegan to resume his drug addiction." Given the coroner's report, Keegan's history of drug dependency and strained relationship with his father, and the absence of any witness to the events prior to Keegan's death, the expert would have been equally unaware of the facts and thus any opinion regarding causation would be too tenuous to create a triable issue whether defendants' acts, or failure to act,

14

substantially caused Keegan's death. (*Rinehart v. Boys & Girls Club of Chula Vista* (2005) 133 Cal.App.4th 419, 430-432 ["'mere possibility of such causation is not enough'"]; *Thomspon v. Sacramento City Unified School Dist.* (2003) 107 Cal.App.4th 1352, 1371-1373 [no competent proof of causation where expert's declaration merely criticized defendant's security measures and handling of the matter].

Since plaintiffs raised no triable issue of material fact as to causation, defendants were entitled to summary judgment. We therefore need not address whether AVUSD had notice of the relationship between Keegan and Casteel and whether the immunity accorded by Education Code section 44808 also applies in this case.

### III. DISPOSITION

The judgment is affirmed. Defendants are to recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
                       J.

We concur:

RAMIREZ
        P.J.

CODRINGTON
        J.